# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 15-29-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LARRY DYWAYNE BLUITT | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence, filed pursuant to 28 U.S.C. § 2255 by Petitioner Larry Bluitt ("Bluitt"). Record Document 73. Bluitt contends that his Sixth Amendment right to effective assistance of counsel was violated when retained counsel incorrectly advised Bluitt about the elements of the offense, thus allowing him to enter into a plea agreement when Bluitt lacked the requisite intent to commit the charged offense. For the reasons enunciated below, Bluitt's section 2255 motion is **DENIED and DISMISSED WITH PREJUDICE**.[1]

## Factual Background

On March 4, 2015, a grand jury in the Western District of Louisiana returned a two count indictment charging Bluitt with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2) (Count One) and transportation of a minor with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a) (Count Two). Record Document 6. Initially, Joe Woodley was appointed to represent Bluitt, but Bluitt subsequently hired Chris

---

[1] Because Bluitt's claims are contrary to law and plainly refuted by the record, no evidentiary hearing is required. <u>See</u> <u>United States v. Green</u>, 882 F.2d 999, 1008 (5th Cir. 1989). Bluitt's request for an evidentiary hearing is **DENIED**.

Hatch to represent him before the district court, leading to Mr. Hatch enrolling as counsel on August 24, 2015.

## I.    The Guilty Plea.

On October 8, 2015, with the advice of Mr. Hatch and pursuant to a plea agreement, Bluitt pled guilty to Count Two, transportation of a minor with intent to engage in prostitution.   Record Documents 42 & 43.   During the guilty plea colloquy, the Court engaged in the following exchange with Bluitt:

Court:         Have you received and read a copy of the indictment against you?

Defendant:   Yes.

Court:         And Mr. Hatch has gone over that with you?

Defendant:   Yes, ma'am.

Court:         . . . I'm going to read it to you . . . . So Count 2 is:  On or about December 14, 2014, in the Western District of Louisiana and elsewhere, the defendant, Larry D. Bluitt, did knowingly transport a minor, B.M., in interstate commerce with the intent that the minor engage in prostitution or in any sexual activity for which any person could be charged with a criminal offense in violation of Title 18 U.S.C. Section 2423(a).

Would you tell me in your own words, sir, what are you charged with in Count 2.

Defendant:   May I ask my attorney a question?

Court:         Yes, absolutely.  Mr. Hatch is here for that purpose.

. . .

Court:         All right.  Tell me what you believe you are charged with.

Defendant:   Bringing a minor across state lines with her to engage in prostitution.

Court:         . . . And you have discussed this with Mr. Hatch?

2

| | |
|---|---|
| Defendant: | Yes, ma'am. |
| Court: | . . . And how do you wish to plead in this matter to that Count 2? |
| Defendant: | Guilty. |

Record Document 64, pp. 3-5.

The Court next reviewed the stipulated factual basis with Bluitt:

| | |
|---|---|
| Court: | . . . I'm going to read you the factual basis and . . . want to make sure that you believe that the facts that are set out are true and correct. |
| | . . . |
| | Okay.  On December 17, 2014, members of the FBI Violent Crimes Against Children Task Force, responded in an undercover capacity to an advertisement for prostitution posted on the website backpage.com.  An undercover officer arranged to meet the female prostitute at the Lakeshore Inn, Shreveport, Louisiana. |
| | Law enforcement observed the defendant, Larry D. Bluitt, drive the female to the hotel and drop her off for the meeting. The undercover officer met with the female in a hotel room.  She agreed to perform oral, anal, and vaginal sex, and he paid her $200. Task Force officers then entered the room and detained the female. She was identified as B.M., a 14-year-old female from Dallas, Texas. The defendant, Larry D. Bluitt, was arrested by Task Force members in the parking lot. |
| | A few days prior, Bluitt personally drove B.M. and an adult prostitute from Dallas, Texas to Shreveport, Louisiana, with the intention that both females engage in prostitution in the  Shreveport area. |
| | . . . |
| | Is that your signature at the bottom of the page for the factual basis, sir – |
| Defendant: | Yes, ma'am. |
| Court: | . . . Do you have any questions to ask about that factual basis? |
| Defendant: | No, ma'am. |

Court:          Do you agree that the facts that are set out in that factual basis are correct?

Defendant:  Yes, ma'am.

Id. at pp. 5-7.

The Court later addressed the elements of the offense which were required to convict Bluitt of Count Two.  There, the Court explained:

Court:          . . . Has Mr. Hatch gone over the sheet that is labeled Elements of the Offense, with you?

Defendant:  Yes, ma'am.

Court:          . . . I'm going to go over those elements with you. And that is that they would be that you knowingly transported B.M. in interstate commerce, that at the time of the transportation B.M. was less than 18 years old, and at the time of the transportation, the defendant -- that's you -- intended that B.M. would engage in prostitution. Do you understand that these are the three elements that the Government would have to prove each of those elements beyond a reasonable doubt?

Defendant:  Yes, ma'am.

Id. at p. 11.

The Court asked Bluitt if he was willing to plead guilty because he was, in fact, guilty as charged.  Id. at p. 12.  Bluitt answered, "Yes, ma'am."  Id. at p. 13.  The Court inquired whether this was "a free and voluntary act, done with the advice and consent of Mr. Hatch?"  Id.  Again, Bluitt answered, "Yes, ma'am."  Id.  The Court asked Bluitt whether there was anything in the plea agreement that he did not understand, to which he stated "No, ma'am." The Court pressed, explaining that "now is your chance to ask, all right?"  Id. at p. 14.  Bluitt stated that he understood.  Asking another way, the Court inquired, "Is there anything you believe is incorrect or wrong in the plea agreement?"  Id.  Bluitt

4

stated, "No, ma'am."  Id.  After reviewing the various provisions of the plea agreement and Bluitt's sentencing exposure, the Court ultimately accepted Bluitt's guilty plea to Count Two.

## II.    Sentencing.

The United States Probation Office prepared a Presentence Investigation Report to which Bluitt filed objections.  Because Bluitt does not challenge the sentence imposed by the Court, this ruling will not address the nature of those objections.  In its calculation of the Guideline range, the Court found that Bluitt began with an offense level of 28.  Record Document 65, p. 54.  He received a two-point enhancement for use of a computer, pursuant to U.S.S.G. § 2G1.3(b)(3)(B), and another two-point enhancement because the offense involved the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G1.3(b)(4).  Id.  Bluitt then received a three-level reduction for acceptance of responsibility.  Id.  With a total offense level of 29 and a criminal history level VI, Bluitt's guideline range was 151-188 months.  Id.  The Court sentenced him to 178 months. Record Document 59, p. 2.

## III.   The Appeal.

Bluitt timely appealed and challenged the sentencing enhancement he received for use of a computer, pursuant to U.S.S.G. § 2G1.3(b)(3)(B).  Record Document 72, p. 3. The Fifth Circuit rejected Bluitt's argument, finding this Court's factual findings were sufficient for purposes of the sentencing enhancement.  Id. at p. 4.  As such, on January 25, 2017, the Fifth Circuit affirmed this Court's judgment. Id. at p. 2.

On February 16, 2018, Bluitt timely filed the instant motion under 28 U.S.C. § 2255.[2] In this motion, he asserts that he lacked the requisite intent to commit the offense; that is, that at the time he transported the minor victim across state lines, he did not have the intent for her to engage in prostitution.

## Law and Analysis

### I.    28 U.S.C. § 2255.

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack."  United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a).  "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" United States v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998).  Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted."  United

---

[2] After the Fifth Circuit issued its opinion affirming the district court's judgment, Bluitt had ninety days to seek a petition for writ of certiorari with the Supreme Court.  See Sup. Ct. R. 13.  His one-year limitation to file his § 2255 began to run only "upon the expiration of the time for seeking certiorari in the U.S. Supreme Court, even where . . . the appellant [did] not actually file[] such a petition."  United States v. Gamble, 208 F.3d 536, 536 (5th Cir. 2000).  Thus, the Court finds Bluitt's § 2255 petition was timely filed.

States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (internal marks omitted) (quoting United States v. Frady, 456 U.S. 152, 164 (1982)).

    A.      Ineffective Assistance of Counsel.

    "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)).  Courts may consider claims of ineffective assistance of counsel brought for the first time in a § 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. Id.; see also Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997).  The petitioner bears the burden of proof on both components of the Strickland standard.  See Strickland, 466 U.S. at 687.

    As to the first prong, in determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal marks omitted).  If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel

unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." United States v. Payne, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting Lockhart v. McCotter, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[3] Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Id.   A

---

[3] The Strickland Court outlined the extent of prejudice that must be established by the defendant:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.
> . . .
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
> . . .
>
> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Strickland, 466 U.S. at 691-95.

defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001).  Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998).  The prejudice element requires more than a mere allegation; the defendant must affirmatively prove it.  United States v. Thompson, 44 F.3d 1004, *2 (5th Cir. 1995).  Because both prongs of *Strickland* must be satisfied, a court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the remaining prong.  See Strickland, 466 U.S. at 689-94.

> B.     Guilty Pleas.

Where, as here, the defendant has been convicted pursuant to a guilty plea, the analysis is slightly different.  "Addressing the general question of the extent to which constitutional claims survive the entry of a guilty plea, the Supreme Court has repeatedly stated that a guilty plea effects a forfeiture of certain constitutional claims *if* the plea is entered knowingly and voluntarily and with competent assistance and advice by defense counsel." United States v. Batamula, 788 F.3d 166, 176 (5th Cir. 2015) (abrogated on other grounds) (citing Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been

advised by competent counsel, may not be collaterally attacked.")).  "Claims of ineffective assistance of counsel that affected the validity of the guilty plea are necessarily excluded from this general rule that constitutional defenses are forfeited by entry of a guilty plea." Id. (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, . . . [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient.]")).

Thus, the only claims that survive a guilty plea are those implicating the validity of the plea itself.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000).  Generally, "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea."  United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008) (internal marks omitted).  "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice."  United States v. Rivas-Lopez, 678 F.3d 353, 356-57 (5th Cir. 2012) (citing Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir. 1995)).  "When considering challenges to guilty plea proceedings, [the Fifth Circuit has] focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  United States v. Gracia, 983 F.2d 625, 627-28 (5th Cir. 1993); see also United States v. Gaitan, 954 F.2d 1005, 1011 (5th Cir. 1992) ("For a plea to be knowing and voluntary, the

10

defendant must be advised of and understand the consequences of the guilty plea.")
(internal marks omitted).

The Fifth Circuit has explained that as long as a defendant understands the length
of imprisonment and the fine that might possibly be imposed at sentencing, then he is
fully aware of the consequences of his guilty plea.  United States v. Young, 981 F.2d 180,
184 (5th Cir. 1992); United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990).  The
Supreme Court "has found that the Constitution, in respect to a defendant's awareness of
relevant circumstances, does not require complete knowledge of the relevant
circumstances, but permits a court to accept a guilty plea, with its accompanying waiver
of various constitutional rights, despite various forms of misapprehension under which a
defendant might labor."  United States v. Ruiz, 536 U.S. 622, 630 (2002).

1.    Advice to Plead Guilty.

With respect to plea advice, the court must determine whether the lawyer was
familiar with the relevant facts and law, such that his advice permitted the accused to
make an informed and conscious choice to plead guilty.  Cavitt, 550 F.3d at 440–41.  As
the Fifth Circuit has advised, defense counsel must

> actually and substantially assist his client in deciding whether
> to plead guilty. It is his job to provide the accused an
> understanding of the law in relation to the facts. The advice he
> gives need not be perfect, but it must be reasonably
> competent. His advice should permit the accused to make an
> informed and conscious choice. In other words, if the quality
> of counsel's service falls below a certain minimum level, the
> client's guilty plea cannot be knowing and voluntary because it
> will not represent an informed choice. And a lawyer who is not
> familiar with the facts and law relevant to his client's case
> cannot meet that required minimal level.

Id. at 440.

In Hill v. Lockhart, the Supreme Court instructed that Strickland's prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." 474 U.S. 52, 59 (1985).  "When a defendant alleges that his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain . . . .  Instead, we consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.' " Lee v. United States, 137 S. Ct. 1958, 1965 (2017) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)).  Thus, when the defendant asserts he would not have pleaded guilty if counsel had advised him correctly, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

In Lee v. United States, the Supreme Court clarified the prejudice showing necessary for challenges relating to a defendant's understanding of the consequences of a guilty plea.  In that case, the defendant was a lawful permanent resident for whom deportation was the primary concern in his decision to plead guilty.  Id. at 1967.  Lee had asked his attorney on numerous occasions whether he was at risk of deportation, and the attorney advised he was not.  Id. at 1963.  Lee entered a guilty plea and ultimately was deported.  Id.  Both Lee and the attorney subsequently testified that Lee would have gone to trial but for the attorney's incorrect advice on the immigration consequences of the guilty plea.  Id.  There was also evidence that during the plea colloquy, Lee was told by

counsel that the judge's admonition that a conviction could result in deportation was a "standard warning." Id. at 1968.

Lee's counsel's error did not affect Lee's prospects at trial but rather affected his understanding of the consequences of pleading guilty. Id. at 1967. His focus was on the prospect of deportation, an issue about which his attorney was misinformed, and the deficient advice that Lee would not be deported is what led Lee to plead guilty rather than go to trial. Id. at 1967-68. Simply put, but for the "attorney's incompetence, Lee would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? Almost certainly." Id. at 1968. The "almost" was crucial, as the benefits of avoiding deportation so far outweighed the burdens of "a year or two more of prison time" by risking a trial. Id. at 1969. Lee's assertion that with proper legal advice, he would not have accepted a plea despite the overwhelming evidence against him, was "backed by substantial and uncontroverted evidence." Id. The Supreme Court explained, "The decision whether to plead guilty . . . involves assessing the respective consequences of a conviction after trial and by plea. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." Id. at 1966 (citation omitted). "[W]here we are . . . asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." Id. at 1967. Thus, the Court found that under these "unusual circumstances," Lee established prejudice by demonstrating a reasonable probability that he would have rejected the plea, even though his chances of acquittal were slim. Id.

However, the Lee Court warned lower courts against "upset[ting] a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1966-67.  "[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession," the "defendant must also show that he would have been better off going to trial." Id. at 1965. But, when the attorney's error affects the defendant's understanding of the consequences of pleading guilty, the defendant is not required to prove that he would have been better off going to trial.  Id. at 1965-67.  He must present contemporaneous evidence to substantiate his claim that he would have insisted on going to trial had he been properly informed of the consequences of his guilty plea.

Thus, in the context of guilty pleas there is a distinction between claims related to the defendant's prospects of success on the underlying charges and claims related to the consequences flowing from the plea.  Id. at 1965.  Where the ineffective assistance claim "turns on [the defendant's] prospects of success" on the underlying charges and "those are affected by the attorney's error," the inquiry considers whether he would have been better off going to trial.  Id.  This involves predictions of the ultimate outcome at trial. Id.; Premo v. Moore, 562 U.S. 115, 126–27, 132 (2011); Hill, 474 U.S. at 59.  A defendant who lacks a viable defense "fac[es] long odds" and "will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after

trial." <u>Lee</u>, 137 S. Ct. at 1966.  "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one."  <u>Id.</u>  To the contrary, where the claim relates to the consequences of the plea, as was the case in <u>Lee</u>, the claim may not turn solely on the likelihood of the outcome at trial. <u>Id.</u>

## II.   Intent Requirement in 18 U.S.C. § 2423(a).

Bluitt's claim rests on the premise that he lacked the requisite intent to commit a violation of Section 2423(a).  Congress passed the Mann Act to criminalize transporting individuals across state lines for the "purpose of prostitution or debauchery, or for any other immoral purpose." White-Slave Traffic (Mann) Act, ch. 395, 36 Stat. 825 (1910) (codified as amended at 18 U.S.C. §§ 2421–2424). 18 U.S.C. § 2423(a) extends the Mann Act to provide:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). One of the essential elements of a Mann Act violation is that the "interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities." <u>Mortensen v. United States</u>, 322 U.S. 369, 374 (1944) (citing <u>Hansen v. Haff</u>, 291 U.S. 559, 563 (1934)).

In <u>Mortensen v. United States</u>, the Supreme Court described the *mens rea* of a Mann Act offense as a requirement that the "dominant motive" for the interstate movement be illicit sexual conduct. <u>Id.</u> The Mortensens operated a brothel and went on a vacation, taking two of the sex workers with them. <u>Id.</u> at 372. Because no sex work

occurred during the trip, the Supreme Court concluded that illicit sexual activity played no part in the interstate transportation; rather, "[t]he sole purpose of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls." Id. at 375. Because weighing the relative importance of multiple motives for travel was not essential to the Mortensen Court's holding, the Seventh Circuit has characterized the "dominant motive" language as dicta. United States v. McGuire, 627 F.3d 622, 625 (7th Cir. 2010); cf. United States v. Hoschouer, 224 F. App'x 923, 926 (11th Cir. 2007) (per curiam) (citing United States v. Cole, 262 F.3d 704, 709 (8th Cir. 2001); United States v. Ellis, 935 F.2d 385, 391–92 (1st Cir. 1991)) ("But, the plain language of section 2423(a) requires only that the defendant knowingly transport a minor with the 'intent' of engaging in criminal sexual activity. It does not require evidence of any 'purpose' or 'motive' of the interstate travel.").

The Fifth Circuit has interpreted the Supreme Court's language "narrowly" such that travel may have a lawful purpose so long as "an efficient and compelling purpose" of the interstate transportation was illicit. United States v. Campbell, 49 F.3d 1079, 1083 (5th Cir. 1995) (quoting Forrest v. United States, 363 F.2d 348, 349 (5th Cir. 1966)). Because multiple purposes may coexist, the "'dominant' requirement does not impose a 'but for' limitation on the defendant's intent." Id. Instead, a jury may find intent so long as the criminal sexual conduct is not merely "incidental" to the journey. Id.  When a defendant has multiple motivations for the interstate travel, the illicit purpose need not be more compelling than the lawful purpose so long as the illicit purpose is, in fact, compelling. See id. (rejecting a weighing of various motives as "arithmetic hairsplitting"). Likewise, there

is no requirement that the defendant possess the criminal intent prior to crossing state lines. See United States v. Garcia-Lopez, 234 F.3d 217, 219 (5th Cir. 2000).  It is only required that the intent "be found to exist before the conclusion of the interstate journey." Mortensen, 322 U.S. at 374.

In cases where transportation of a minor across state lines has a licit purpose, the Fifth Circuit looks to circumstantial evidence to determine whether illicit conduct was also a "compelling purpose." Campbell, 49 F.3d at 1083 (quoting Forrest, 363 F.2d at 349). A pattern of grooming behavior "designed to reduce resistance to sexual advances," including isolating a minor from a parent or guardian, is circumstantial evidence of unlawful intent for transportation that follows such conduct. United States v. Hitt, 473 F.3d 146, 152 (5th Cir. 2006); see Campbell, 49 F.3d at 1083 (finding criminal intent for interstate transportation when a defendant's "act of befriending [the victim] could fairly be called recruitment" into prostitution). The Fifth Circuit has also found that intrastate sexual contact in the minor's home state before or after the interstate journey supports a finding of the requisite intent. Sealed Appellee v. Sealed Appellant, 825 F.3d 247, 253 (5th Cir. 2016); United States v. Bennett, 258 F. App'x 671, 685 (5th Cir. 2007) ("A jury could rationally infer from the sexual activity that occurred both before and after state lines were crossed, that Bennett transported [the minor] with intent to engage in sexual activity with her."). Finally, a pattern of similar sexual misconduct with other victims allows a jury to infer intent. Bennett, 258 F. App'x at 684 (holding that evidence of erotic communications with other minors supported a finding that the intent of transporting the victim was to engage in a sexual relationship); Hitt, 473 F.3d at 152 n.4 (holding that evidence that

defendants had sexually assaulted another boy using techniques similar to those used on the victim supported the necessary inference).

### III.   **Bluitt's Decision to Plead Guilty.**

Bluitt alleges that Mr. Hatch rendered ineffective assistance of counsel when he incorrectly advised Bluitt that criminal intent, or the lack thereof, was not relevant to the inquiry of guilt.  This advice led Bluitt to plead guilty rather than proceed to trial.  Bluitt asserts that he informed Mr. Hatch that the "sole purpose" of his trip to Shreveport was to gamble, but that "the girls eventually started prostituting themselves.  I emphasized . . . that I had nothing to do with the girls' decision to prostitute themselves . . . ."  Record Document 74-1, p. 2.  Bluitt further represents that Mr. Hatch informed him "that this prosecution had nothing to do with whether I was a 'pimp,' and 'the only thing they have to prove [to establish my guilt of the offense] is that I knew that the girls were prostituting' themselves."  Id. at p. 3.

Essentially, Bluitt's contention is that Mr. Hatch knew Bluitt did not have the intent for B.M. to engage in prostitution in Louisiana, but that he advised Bluitt that Bluitt's knowledge of the forthcoming prostitution was legally sufficient for conviction.  That is, Mr. Hatch's advice was allegedly that so long as Bluitt knew B.M. intended to prostitute herself, Bluitt would be deemed guilty of the offense.  Bluitt contends that had he known he had to intend for B.M.'s prostitution to be the "dominant motive" of the trip, he would have proceeded to trial.  Id.

Defendants typically challenge "an attorney's advice to plead guilty. With excellent hindsight, prisoners often contend that, had they gone to trial, they would have presented

a stellar defense and, ultimately, received an acquittal." United States v. Faubion, 19 F.3d 226, 228–29 (5th Cir. 1994).  This is just the sort of representation that Bluitt has made here.  The claim is evaluated under the Strickland standard of deficient performance and prejudice.  Assuming *arguendo* that Mr. Hatch provided the legal advice alleged by Bluitt and that that advice was legally deficient under Strickland, Bluitt nevertheless cannot establish prejudice.[4]

Here, Bluitt's claim does not relate to the consequences of his plea but rather his likelihood of success at trial.  Thus, he is required to present contemporaneous evidence demonstrating a reasonable probability that but for Mr. Hatch's deficient advice, he would have insisted on going to trial.  Again, this inquiry revolves around Bluitt's prospects of success at trial, and therefore he is required to show that he would have been better off going to trial. Bluitt has not identified any contemporaneous evidence substantiating his claim that he would not have pleaded guilty.  To the contrary, his protestations are firmly in the category of "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."  Lee, 137 S. Ct. at 1967.  The contemporaneous evidence easily refutes Bluitt's claim.

The Court first turns to the guilty plea hearing in this case where there is sufficient evidence of Bluitt's understanding of the requisite *mens rea*.  At the start of the plea colloquy, the Court read the indictment aloud.  Record Document 64, pp. 3-4.  The indictment specifically charged Bluitt with transporting B.M. across state lines with "the

---

[4] The Court need not determine whether counsel provided deficient advice, as the Strickland inquiry fails under the prejudice prong.

*intent* that the minor engage in prostitution or any sexual activity . . . ."  Id. at p. 4 (emphasis added).  Bluitt swore in open court that he and Mr. Hatch had reviewed the indictment and the charges against him.  Id.  When he explained this charge in his own words, Bluitt said he was charged with "[b]ringing a minor across state lines with her to engage in prostitution." Id. at p. 5.

The Court then read the stipulated factual basis aloud.  That statement recounted that Bluitt had driven B.M. to a hotel room where she was to engage in prostitution.  Id. at p. 6.  But more importantly, it contained the following statement:  "Bluitt personally drove B.M. and an adult prostitute from Dallas, Texas to Shreveport, Louisiana, with the *intention* that both females engage in prostitution in the Shreveport area." Id. (emphasis added).  Bluitt stipulated to and signed the factual basis, which was entered into the record. Record Document 43-2, p. 2.  Bluitt affirmed for the Court that he had signed that factual basis, and the document evidenced in the record indeed bears his signature. Documents signed by a defendant at his plea hearing are entitled to great evidentiary weight.  See United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994).  Bluitt's signature on the factual basis is prima facie proof of his understanding of the charges and the importance of intent, and it establishes his agreement that he possessed the requisite level of intent, i.e., that he intended for B.M. to engage in prostitution.  See Theriot v. Whitley, 18 F.3d 311, 314 (5th Cir. 1994).

While under oath, Bluitt stated that the factual basis was a correct and accurate representation of his actions.  Record Document 64 at p. 7.  "[S]uch testimony in open court carries a strong presumption of verity."  DeVille v. Whitley, 21 F.3d 654, 659 (5th

Cir. 1994).  To be sure, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).  As the Fifth Circuit has explained, "[o]ur willingness to accept plea agreements and colloquies as the factual bases for convictions demands a corollary respect for the integrity of their contents."  United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006) (instructing that in looking at whether defendant's guilty plea admits to requisite *mens rea*, a court must consider "the plea words themselves.").  Here, the indictment and the factual basis contained the words "intent" and "intention" with regard to Bluitt's *mens rea* in bringing B.M. from Texas to Louisiana.  The "words themselves" resolve any doubt about his understanding of the charges against him and his agreement that he did exactly what he was charged with.

Bluitt's understanding of the requisite *mens rea* was also made abundantly clear in the Court's review of the elements of the offense.  In reviewing these elements with Bluitt on the record, the Court pointedly informed Bluitt that one element of the offense was that "the defendant—that's you—intended that B.M. would engage in prostitution." Record Document 64, p. 11.  The Court then asked, "Do you understand that these are the . . . elements that the Government would have to prove each of those beyond a reasonable doubt."  Id. The response was, "Yes, ma'am."  Id.  Again, Bluitt's statements under oath in open court, which are wholly contrary to what he now asserts, are entitled to a strong presumption of truthfulness.   Bluitt's self-serving allegations, which are undermined by the record, have failed to rebut the presumption of truthfulness accorded his sworn statements.  See United States v. McClinton, 782 F. App'x 312, 314–15 (5th Cir.

2019) (finding that defendant's change-of-plea hearing was "contemporaneous evidence" that "demonstrates that he made several sworn statements that are inconsistent with his post hoc assertions in his § 2255 claim" and which "conclusively negate[d] his post hoc assertions").  Furthermore, the Fifth Circuit has recognized that a judge's warnings during the guilty plea hearing may undermine the defendant's claim of being prejudiced by his attorney's incorrect advice.  United States v. Kayode, 777 F.3d 719, 728-29 (5th Cir. 2014). Here, the Court correctly advised Bluitt of the intent element required for conviction.  Bluitt affirmatively expressed his understanding of that requirement and agreed that he possessed such intent when he transported B.M. across state lines.

Thus, both the statements Bluitt made during the plea colloquy and the signed factual basis support the conclusion that he knew intent was an element of the offense and that he agreed he possessed the requisite level of intent.  He has submitted no contemporaneous evidence to contradict this finding.  Rather, his claim is negated by the overwhelming contemporaneous evidence in the record.

The Court will also address the inculpatory evidence Bluitt had knowledge of when he entered into this guilty plea, as that evidence would have had an impact on his assessment of his prospects at trial.  First, B.M. had previously engaged in prostitution for Bluitt in Texas.  Record Document 65, pp. 9, 30; Record Document 57-2, p. 1.  Second, during an F.B.I. interview with the other prostitute involved in this case, Kajai Victor ("Victor"), Victor stated that B.M. was present at Bluitt's residence in Texas when Victor and Bluitt "were discussing traveling to Shreveport or Houston for the sole purpose of posting ads on BACKPAGE.COM and engag[ing] in prostitution.  [B.M.] asked BLUITT and

22

VICTOR if she could come along."  Record Document 57-3, p. 3; see also Record Document 65, p. 9.  Assessing that evidence, the Court surmised at the sentencing hearing that B.M. "was invited to Mr. Bluitt's home to plan this trip to Bossier City . . . ."  Record Document 65, p. 47.  Third, there was evidence that Bluitt had been recorded on a jail call asking his mother to remove a fake birth certificate from his truck.  The fake birth certificate was being used to establish that B.M. was actually an adult.  Id. at p. 30.  Fourth, Bluitt provided a cell phone to B.M. for her to use in creating the backpage.com solicitation ad. Id. at pp. 31-32.   In addition, for an interested "John" to make an appointment with B.M. for sex, he would call the number of the cell provided by Bluitt.  Id.  Finally, when Bluitt was arrested, he had $8,000 in his possession.  Victor told the F.B.I. that both she and B.M. gave Bluitt all the money they made from prostituting.  Record Document 57-3, p. 4.

This evidence suggests that a trip was planned to Louisiana for the purpose of engaging in prostitution.  Preparation occurred for this trip, including obtaining (or at least bringing) a fake birth certificate for B.M. and Bluitt's purchase and provision of a new cell phone for B.M.  There is also evidence that Bluitt took all of the prostitution money earned by Victor and B.M.  Thus, looking at the totality of the evidence, as it relates to Bluitt's decisionmaking, it is highly likely Bluitt would have been convicted at trial.  The Court views this evidence through the lens of the intent required for conviction of Section 2423(a), discussed previously.  From the above evidence, a jury could infer Bluitt's intent to bring B.M. to Louisiana for the purpose of prostitution, even though his defense case may have raised the possibility that he traveled to Shreveport to gamble.  Under the jurisprudence, it is clear that Bluitt's trip could have dual purposes, both licit and illicit.  As

such, gambling may have been one of his purposes, and it would have been a lawful purpose.  But so long as prostitution was also a compelling purpose of the trip, not merely incidental, Bluitt was guilty of violating Section 2423(a).

Based on the above facts and law, Bluitt cannot establish prejudice because an acquittal on these charges was highly improbable, his defense was undermined by the evidence and the law, and a guilty plea offered him a better resolution than he would have received at trial.  Thus, he cannot establish prejudice under Strickland. See also Young v. Spinner, 873 F.3d 282, 287 (5th Cir. 2017) (recognizing that where the evidence against a defendant is overwhelming, the possibility of an acquittal, and the ability to show prejudice as the result of entering a guilty plea based on advice from counsel, is "exceedingly unlikely."); Kayode, 777 F.3d at 726-27 (finding that the "overwhelming evidence" on the charged offenses and lack of a viable defense other than defendant's own sworn testimony "weighs against a finding of prejudice"); Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) (concluding defendant, "in light of the strong evidence against him"—including an eyewitness lineup identification and his fingerprints being found at the crime scene—had not shown "there is a reasonable probability that he would not have plead[ed] guilty").

## Conclusion

For the foregoing reasons, based on the record and the relevant jurisprudence, this Court finds that Bluitt has failed to establish that any deficiency in his counsel's performance prejudiced him under Strickland.  Therefore, Bluitt's § 2255 motion [Record

Document 73] be and is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.  Because Blutt's claims are refuted by the record, no evidentiary hearing is required.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal.  In this case, a certificate of appealability is **DENIED** because Bluitt has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 31st day of March, 2021.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE